Good morning, your honors. Andy Boyd from the State Appellate Defender's Office on behalf of the defendant, Jason Richey. If it pleases the court and counsel, this appeal is from the Circuit Court of Appellate Defender's Office. This is the second state's dismissal of Mr. Richey's post-conviction petition, and our central argument in this case is that this honorable court, in its March 2009 decision, made an express finding that Mr. Richey's petition presented the gist of a claim of ineffective assistance to guilty plea counsel, and it was therefore improper both on remand for counselors who have filed a motion seeking to withdraw from the case and for the trial court to have granted the motion. Now, I'd like to take a little bit of time to discuss the procedural history of this case because it's crucial to our argument, and second of all, as the court's aware, the state has filed a motion to supplement the record. This motion was a routine motion. My assumption is that the court is going to grant the motion, and I would like to briefly address the state's motion if there's no objections from the court. So, way back in 2001, Mr. Richey was charged with first degree murder. Mr. Richey's attorney filed a motion for a fitness examination. The trial court found there was a bona fide doubt as to Mr. Richey's fitness. Dr. Zut then examined Mr. Richey back in 2001 and determined that he suffered from a number of mental health problems that could have affected his ability to control his actions, but that he was able to understand the wrongfulness of his conduct. The court found him fit to stay on trial. He ultimately pled guilty. He was sentenced to 45 years. He did not file any direct appeal. In 2004, he filed a combined post-conviction petition and a petition for relief from judgment. Petition for relief from judgment is not a part of this appeal. The post-conviction petition contained a number of issues, only one of which is relevant here, and that is to claim the plea counsel is ineffective for failing to file a motion to suppress his confession to the police. In 2006, this court apparently entered Rule 23 order reversing and remanding both the petition for relief from judgment and the post-conviction petition. The state filed a petition for relief from appeal, which is included in this motion to supplement the record. The Supreme Court denied that petition, and this is back in 2007 when the Supreme Court denied that petition. The Supreme Court also ordered this court to vacate its 2000 decision, reconsider its judgment in light of the new Vincent case, and what followed was this court's March 26, 2009 decision, which is the decision that's relevant here. And in that decision, the court affirmed the circuit court's dismissal of the 2004 petition based on Vincent, but again reversed the circuit court's dismissal of the post-conviction petition. And this is key, Your Honors. What this court expressed to be filed was that a motion to suppress should have been filed because Mr. Ritzey's lack of ability to control his actions could have affected what he told the police or his ability to understand the consequences of speaking with the police. So this court then remanded the case for further post-conviction proceedings, and importantly in remanding the case, what this court expressly directed the trial court to do was to appoint counsel to file an amended post-conviction petition. And there's no indication in the record that the state filed any motion to challenge this court's March 2009 decision. The state's motion to supplement doesn't indicate that they challenged this court's March 2009 decision. So there's a couple of things to point out here about the state's motion to supplement the record. First of all, since the state hasn't challenged this court's March 2009 decision, it remains the law of the case. And secondly, the state's petition for legal appeal shows that the Supreme Court already rejected the state's arguments regarding the post-conviction petition. How does that indicate that, that they didn't rule on it? Well, when a Supreme Court declines to hear a case, it's a pretty clear indication that they're not interested in reversing the decision. No, there's actually a case law from the Supreme Court indicating that the denial or grant of anything doesn't mean one way or the other. Well... On a petition, are we granting it or denying it? Well, I'm not familiar with that case law. I'll defer to your Honor on that point. But the important thing is that PLA went to this court's 2006 decision. The state didn't file any PLA or petition for re-hearing this in the 2009 decision. And that's the important thing, and that's what makes the state's motion to supplement the record a red herring, is that the operative decision here is a 2009 decision. As to our argument, our central argument here is that both the trial court and post-conviction counsel improperly second-guessed this court's determination that the petition was not frivolous or patently without merit. And our argument relies mainly on two Supreme Court cases, Greer and Cooner. At the time counsel filed this motion to withdraw, Greer was finding precedent, but we also believe that Cooner applies to this case. And in Greer, the Illinois Supreme Court considered the question whether appointed counsel had a right to withdraw or counsel had complied with the Rule 651 requirements and found that there were no meritorious issues to be presented. Rule 651C provides that post-conviction counsel has three responsibilities. The first of those is to consult with the defendant. The second of those is to examine a trial court record. And the last of those is to make whatever amendments are necessary to the pro se petition to present the defendant's claims. Now, in Greer, the court repeatedly emphasized that the defendant petitioned in that case had gone to the second stage of post-conviction proceedings without the trial court taking any action on the petition. It had gone to the second stage by default. In that case in Greer, because counsel had investigated what was a previously unexamined petition and found it frivolous, and because the record showed that counsel's conclusion was correct, the court found that counsel should be allowed to withdraw. So it's our position, Your Honor, that Greer provides four conditions that need to be met before a post-conviction counsel can seek to withdraw. The first, there hasn't been any judicial determination, first stage judicial determination of the petition's merits. Counsel has fulfilled the first two Rule 651 duties. Counsel has made some effort to explain why the claims are frivolous or patently without merit. And the record shows that the claims are, in fact, frivolously and patently without merit. And here, these conditions were not met. At least two of them were not met. The first condition, clearly, there have been a judicial first stage determination of the petition's merits. And not just by a trial court, but by a court of review, namely this Honorable Court. And as to the last condition, the record shows in the form of this Court's ruling, a very clear ruling, that the petition was not, in fact, frivolously or patently without merit. So the trial court should have denied the motion to withdraw based on Greer. It's also our position that not only should the motion have been denied, counsel should not have filed this motion in the first place. What counsel tried to do was to substantiate Mr. Ritzey's claims regarding counsel's failure to find, plea counsel's failure to file a motion to suppress by creating a retroactive fitness determination. But Dr. Zut wasn't able to do that. And that is our argument, is that was an improper ground for filing a motion to withdraw. Under Greer, the inability of post-conviction counsel to properly substantiate a defendant's claims is absolutely not the standard by which counsel ought to be deciding to file a motion to withdraw. And the more important thing to point out here, Your Honors, is that Dr. Zut's report in 2010 didn't do anything to render the issue that this Court identified, frivolous. Dr. Zut only determined that she was unable in 2010 to render any kind of a retroactive professional opinion as to whether or not Mr. Ritzey could waive his Miranda rights all the way back in 2001. In other words, her conclusion was a non-conclusion. She didn't determine anything. And so her non-conclusion in 2010 could not have done anything to disturb this Court's finding that plea counsel should have filed a motion to suppress based on the 2001 report. So it's our position, Your Honors, that counsel should not have filed a motion to withdraw. What counsel should have done instead was to do what this Court instructed it to do, and that was to file an amended petition by placing the ineffective assistance of plea counsel claim into its proper legal format. Counsel also could have supplemented that with Dr. Zut's 2001 report, which showed that Mr. Ritzey suffered from any number of different psychiatric problems and was taking a number of different psychotropic medications when he confessed to the police. It's also our position, Your Honors, that the Cooner case, the more recent Cooner case, provides further support for our position. Now, in that case, there had been, like this case, there had been a judicial determination of the petition, and the Court found the petition had sufficient merit to reach the second stage of post-conviction proceedings. The point of counsel's duty at that point were very clear. You take the position that the trial court already evaluated, and you present it to the court in its proper legal format. And that's our position, is that's what should have happened here. What the Cooner Court reasoned, and this, we think, is fairly crucial to our argument, is that a request for relief to withdraw as counsel after there's been a first stage determination of the merits, and that first stage determination is that the petition is not frivolous, nor is it patented without merit. That seeking to withdraw at that point is an extraordinary thing for a defense attorney to do, because what, in Cooner, the trial court here, this Honorable Court of Review, has determined was that the petition is not frivolous, nor is it patently without merit. And by filing the motion to withdraw, counsel second-guesses the court's judgment. Now, clearly, in cases where it's unethical to proceed, counsel would somehow be in violation of Rule 137 because of some sort of evidence that counsel has uncovered that would completely and entirely negate the arguments that the petitioner made. In that situation, perhaps a motion to withdraw is appropriate. But that's not what happened here. When our court reversed it, it remanded it for further hearing, right? Yes. Yes. It didn't make a final determination that it had merit. It made a first stage determination, and that was all. You're honest, correct. It remanded it for second stage proceedings. And that's the essence of our argument, is that what should have happened was what this court instructed the trial court and, by extension, appointed counsel to do. This court identified an issue that was not frivolous, was not patently without merit, handed that issue on a gold platter to post-conviction counsel, and what happened was, unfortunately, counsel tried to find one piece of evidence that, had counsel been successful, had Dr. Zook been able to determine retroactively that Mr. Ritchie was not able to waive his Miranda rights, of course, that would have been tremendously helpful. But on the other hand, Dr. Zook did not determine that he was able to waive his Miranda rights. Dr. Zook simply came to no conclusion whatsoever, and that didn't do anything to upset this court's finding. It didn't do anything to upset this court's clear directive that what counsel should have done was to take Mr. Ritchie's arguments and place them into their proper legal format and file the amendment petition. There was evidence in this case, Your Honor. There was evidence in the form of Dr. Zook's 2001 report, and that's the report that this court relied on in making its initial determination that the petition was not frivolous, nor was it patently without merit. That report indicated that Mr. Ritchie suffered from a number of psychological and psychiatric problems. He was taking a whole bunch of psychotropic medications, and, of course, was not able to waive his Miranda rights. And for that reason, this court clearly said that a motion to suppress should have been filed. So there was some evidence. Counsel didn't have the evidence that arguably would have been the best evidence to have in that case, which would have been a retroactive determination that Mr. Ritchie was not able to waive Miranda. Counsel didn't have that. Counsel still had the 2001 report. Counsel also had the benefit of this court's finding that the petition was not frivolous or patently without merit. What happened here, and what was unforeseen, what happened here is Counsel tried to find one piece of evidence that would have been helpful. Counsel couldn't find that piece of evidence. Dr. Zook couldn't do what Counsel would have liked for Dr. Zook to do, and Counsel just threw up his hands and gave up. And with all due respect to post-conviction Counsel, that wasn't appropriate in this case. And it wasn't appropriate in this case under Greer and Cooner, which both provide that when a petition is not frivolous or not patently without merit, you can't file a motion to withdraw. You can't do it. That's clear law expressed by the Supreme Court on two... The petition? Gosh, off the top of my head, I suppose you could make some factual assertions about Mr. Ritchie's psychological state based on Dr. Zook's 2001 report. You could make some factual assertions regarding the psychotropic medications he was taking based on Dr. Zook's 2001 report. You also have Mr. Ritchie's affidavit. The original affidavit that he filed in which he discussed these things. And then you would simply argue that based on Dr. Zook's 2001 report, based on anything that might have been in Mr. Ritchie's affidavit, and you can go back and talk to Mr. Ritchie again. Maybe Mr. Ritchie can shed some more light on what his psychological state might have been at that time. And then you go ahead and you make your argument that plea counsel should have filed a motion to suppress. And you remind the trial court that this honorable court found that the petition was at a minimum not frivolous nor was it patently without merit. And you make the best argument that you can at that point. The best argument you can to say what? That plea counsel should have filed a motion to suppress Mr. Ritchie's conviction. Would it have possibly been successful? Would it have possibly been successful? I don't know. I don't know and I respectfully submit that that's not, with all due respect, that's not the correct question to be asking in this case. Whether or not the petition would ultimately have been successful. That wasn't counsel's job at that point to be making determinations as to whether the petition would have ultimately been successful at the first stage. The appropriate pleadings to make it an issue for the trial court to be able to rule in their favor. Right. And defense attorneys get put in situations, disadvantageous situations all the time where you might not have the best evidence. Whether it's in a trial setting or a post-conviction setting, you might not have the evidence you want, you might not have the case that you want. But your job, if it's ethically possible to do so, is to advocate for your client. And that's what should have happened here. That's what Greer says and that particularly is what Tooner says, is that you cannot simply throw up your hands and walk away from a case, particularly here where there's only one piece of evidence that didn't turn out the way you wanted it to. What led to the focus on the Miranda? There were a number of issues that the defendant had raised in his post-conviction petition and yet the attorney focused solely on the Miranda question. That's a fair question, Your Honor. I have to concede, I don't have the answer at my fingertips. My suspicion, only my suspicion, is that the confession would have been a huge part of the state's evidence had this case proceeded in trial. And the fact that the confession was there and was going to be utilized in trial may have played a role in plea counsel's decision at that point to take the plea. Without the confession, obviously, in most cases, the state's case becomes much weaker. So that's my best guess as to why the focus was on the motion to suppress, because it would have helped the defendant. Had the motion to suppress been filed and had it been granted, it would have helped the defendant tremendously. And that's what this Court pointed out in its 2009 decision. Had that motion been filed and granted, Mr. Ritchie might not have pled guilty. He may have decided to take his chances at trial. I think if I remember correctly, one of Mr. Ritchie's claims in his original post-conviction petition was that he was taking psychotropic drugs at the time of his confess. Is that correct? I believe that's correct, yes, Your Honor. Would that have been an issue that the attorney could have fleshed out without going into the Miranda question as to whether or not the confession was voluntary if he was under the influence of drugs at the time? I certainly think it would have helped the motion to suppress. I'm not sure if I'm answering you. And after the motion to withdraw was allowed, and Mr. Ritchie was proceeding pro se, he said to the Court, my argument is that I was taking drugs. It was not about Miranda. Is that correct? I don't have that piece of record specifically in front of me. If that's what the record says, then that's what the record says. I don't specifically recall, Your Honor. I'd just like to make a couple more points here before I close. I respectfully submit that this Court should reject the State's attempt to re-litigate this Court's March 2009 decision. It's not appropriate for the State to attempt to do that for a number of different reasons. The mandate issued in that case eight years ago, the State didn't file any motion to recall the mandate, and in the State's brief, it concedes that it's merely reiterating the arguments that it made earlier. And I'd also like to underline that there's no question here that Mr. Ritchie's petition is not frivolous, nor is it badly without merit, because the Sonoma Court said that it was not. And at that point, it was counsel's obligation to take that petition, shape it into its proper legal format, support it with whatever documents and affidavits and reports he could have done, and then proceed to advocate for his client as best he could at that point. So what we respectfully request is that the Sonoma Court reverse the trial court's dismissal of Mr. Ritchie's post-conviction petition, remand the case for new second stage proceedings, including the appointment of a new post-conviction counsel. If there's any other questions, I'm happy to answer them. Thank you, Your Honor. May it please the Court. What authority would there be to vacate this Court's earlier remand? That would come under CUNA. What we had in that case was the Court moved it into the second stage. It was a judicial determination to move it into the second stage in CUNA. And they said that a motion to withdraw in that situation would be tantamount to a motion to reconsider the earlier judicial determination that the petition had merited. So the CUNA Court itself allowed a motion to withdraw. Did they actually vacate an earlier remand? They did not in that case because they said that the counsel's motion to withdraw in CUNA did not address the issues that were raised. There were several issues that the counsel failed to address in the motion to withdraw. And therefore, in that case, because the facts are different than here, they did not allow that motion to withdraw in that case. I mean, I can't see that CUNA stands for... I don't understand how you say CUNA stands for a proposition that this Court can vacate an opinion or an order from nine years ago, eight years ago. Well, what it's saying, again, is that it's like a motion to reconsider. The way they say the words were tantamount to a motion to reconsider when a counsel in a post-conviction setting files a motion to withdraw in this circumstance. And what counsel has spoken to is why didn't the state move to withdraw the mandate back in 2009 when it first came out. But as counsel admitted in his reprieve brief, there were no new facts at this time that would have changed, that would have allowed for a motion to withdraw the mandate. We didn't have the second psychological evaluation by Dr. Zut at that time. Also, it would have been a waste of judicial resources to, at that time, again appeal the remand because it was going back to the second stage in the Rule 23 order. And either counsel, either party was likely to have appealed the decision whether it went to the third stage or whether the judge decided to dismiss the petition. The second stage would have been unappealed. So those would be the reasons why we didn't have a motion to withdraw the mandate at that time or even another PLA to challenge the same... Yeah, I'm not trying to be hyper-technical, but I just don't... You know, this is not like a 214.01 thing at the trial level. What you're talking about, Dr. Zut, is a different decision based on other facts. Well, we do have other facts here that this Court didn't have when it made its first decision. We have here post-conviction counsel requested another psychological evaluation. Dr. Zut did that, and this hinged on the DVD of his police interview. And in the prior... And that evaluation, of course, was performed after the remand. And defendants stated that he did not remember the police interview to Dr. Zut. In the prior appeal, this Court's finding of ineffective assistance was based on defendants' inability to control his actions, and this Court found that this could have affected what defendant told the police and his ability to understand the consequences of his doing so. For the second evaluation, Dr. Zut reviewed the DVD of the police interview, and she noted in particular that defendant responded appropriately to questions and he did not appear confused, somnolent, or psychotic were her words. Post-conviction counsel stated that any claim of ineffective assistance of counsel for failing to move to suppress that interview would be speculative and fruitless. Counsel also noted that defendant did not allege that he had asked guilty plea counsel to withdraw his plea or that he was aware of any grounds for withdrawing a plea. And this Court must resolve the ineffective assistance claim against defendant because he did not provide the DVD of the interview to this Court in the first appeal, he has not provided the DVD of the interview for this appeal, and this Court did not have the information that defendant could not even remember the interview prior to the first appeal or prior to this appeal. He has no memory of the interview itself. So the people asked this Court to affirm the trial judge's grant of the post-conviction counsel's motion to withdraw on that basis. Mr. Wessel, as I understand it, the function of post-conviction counsel at the first stage or the second stage is a mechanical function, a scrivener's function, if you will, is to take the post-conviction claim of the defendant that has been found not to be frivolous and without merit and put it in proper form for consideration by the trial court. The courts have said that he doesn't have to look through the rest of the record and find any other meritorious claims, that he doesn't have to actually find that this one is meritorious, that all he has to do is put it in the proper form for consideration of the court. At that point, the state then comes in and files a resistance, if they want a motion to dismiss, and the court then reviews it on merits. There is case law that says that he's not subject to Rule 137 sanctions. If, having been directed to put it in proper form, he does it and it's not meritorious. So, as I understand your argument, you're saying that because this attorney couldn't make an independent judgment that something had merit, that he could not do what he was instructed to do by this court. That would be consistent with Kuhner, where they say if counsel, as they said, extraordinary circumstances, finds that they can't ethically bring the claims, then they can move to withdraw, as counsel did in this point. He had the DVD to review, he had the report said that in the DVD, according to the psychiatrist, the defendant was appropriate and didn't appear to have any psychiatric issues during the interview. So, that would preclude post-conviction counsel from putting that into a form where he would believe that he wouldn't have any ethical basis for doing so. Dr. Zut's original report said that she thought that it was possible that his mental conditions could have affected his ability to control his actions. I won't remake that presumption. Perhaps this court did at that time. I mean, as I stated, that was part of this court's concern about that interview. But again, at that time, the defendant did have the DVD of the interview and didn't present it to this court. The DVD is still out there somewhere. Again, it's not presented to this court. That's the best evidence of the defendant's ability to confess or not confess, is to actually watch that interview to see whether the defendant appeared to be in any way under the influence of any... But isn't the argument not that he would have been noticeably under the influence of being, I think Dr. Zut talked about, you know, indication of alcohol, you know, being drunk or something like that, but that what underlies it is that the medications or whatever these psychotropic drugs would, you know, maybe he could appear to be fully functional, but that he would lack the ability to control his actions that wouldn't be, it would be then involuntary if the medication or this influence would be, you know, the medication has an effect on you, such that it would render it legally impossible for him to make these statements voluntarily. My concern is that if you don't, for the purposes of putting this petition in its proper form, look at 2001 and the things that are in the record from then, and include those in the petition, that you're really leaving out the whole argument, which is, you know, the confession and everything that needs to be suppressed, because I wasn't able to give a voluntary statement. And so whether I signed the Miranda, whether I, you know, appear as if I am in control of my faculties, that these other things, you know, combined would make that impossible. And I guess I think the retroactive fitness here, I mean, to me that was pointless and is basically worthless, because she says, I don't know, how can I tell? I don't know. You know, I wasn't there. All I'm looking at is today. I have no way to assess that. If I may address that? Sure. She said she couldn't determine whether or not he voluntarily waived his Miranda rights, because Miranda was not on the DVD. It wasn't recorded. She said he could understand a Miranda. He knew the implications of Miranda. He could understand that. But there was no way, because it wasn't on the DVD, and he could not remember the interview himself, there was no way she could make an assessment of Miranda waiver. That was that point. But she also said in her report, using some of the information from the 2000 report in those long paragraphs, she also mentioned that she had no medical record showing what kind of psychotropic medications the defendant had been on prior to his confession. So there was no way to determine if he even was on a psychotropic medication at that time, or at what levels. She also mentioned that he had been intoxicated at the time of the crime, but the confession was 14 hours later, and that the alcohol would not have had any effect on him by that time. So I believe that the report delayed some of your concerns. But I guess that being said, I mean, for him to file an emotion to withdraw because he feels he's a frivolous, isn't that really the function, when you put everything in the right form, you file it, you make your argument in front of the court, and the state makes it for the court to make that determination of whether or not it would advance to the third stage? I guess I'm just confused, because it seems that he filed the motion based on the new report, which to me is of little value. I mean, it isn't the basis upon which the initial judicial determination was made, obviously, because it hadn't occurred yet. And it seems like that is all after the fact, instead of based on strictly his points of contention that are in the record, and that post-conviction counsel is asked to help make his claim as recognizable as possible, and then move on. And whether he believes it doesn't have enough merit to go to the third stage, well, I guess that's what that second stage hearing is for. I mean, I guess I'm just a little, it seems like he's sort of putting the cart before the horse. I don't know, I just... Well, Your Honor, the case law does allow for motions to withdraw. So it's not an improper motion to bring, for starters. And yes, counsel, as both Your Honors have clearly stated, and it is accurate, of course, is that counsel, the duty is to amend the petition. But again, the CUNY court allowed specifically, most recently, that in situations like this where there is a judicial determination that's already been made, that counsel can, if he feels it is not ethical to raise, to amend the petition, they can move to withdraw. Of course, that motion of withdrawal can be denied. But in this case, counsel said, I've got nothing to support that counsel was ineffective because there's no way to prove that in any way. And he also pointed out that at the time of the guilty plea, defendant did not ask his counsel to withdraw the plea, and he did not state that there was any grounds such as an involuntary confession on which he could even withdraw the plea. You refer to the fact that certainly counsel can withdraw if there's some ethical problem proceeding with what counsel has, correct? Yes. There is a difference between that question about not ethically able to plead certain things and therefore withdrawing under the representation of a client and the other thing about making determinations. In other words, where was the ethics, I mean, where was the unethical problem, ethical problem, of pleading that first psychiatric report? Where was the ethical problem with pleading about the earlier facts? You know, just laying them out. What canons of ethics were causing the attorney a problem? You know, when you go down to, you know, for example, your opponent has said, well, at least he should have put in the right format what he had. And he had this information from the past. Now, he had no information even present because the person said I can't give you something, right? I can't give you an opinion about this retroactively, right? Correct. But he has a number of facts that are in this record, facts that this court looked at before, right? Right, but the court also didn't have that at second evaluation. And as I mentioned, those particular factors that Dr. Zook spoke to that was directly on point to this court's earlier concerns. You put all those facts into this, you know, petition, okay? Then the court has to make, the trial court has to make a decision based on that pleading. I guess I'm having a question about where in what counsel said in the motion withdrawal are the ethical problems? What canons of ethics prevented counsel from pleading those other facts? He couldn't plead because he had no evidence to back up the claim. There's no support for his claim whatsoever. I believe that was the ethical issue for the counsel because he could not substantiate the claim in any way, shape, or form. Even though he could put it in a legal language. You can take any claim and put it in a legal language, but you have to have support for that claim. It can't be just a frivolous claim, it can't be just a supposition. Whether or not a claim is frivolous is a determination, right? Right, and I submit that the trial judge in granting the motion to withdraw made that determination based on the claims that counsel made in his motion. Saying, I have no support for this. Why is it that he had no support because of the most recent evaluation? Well, he also had looked at the DVD himself. And so when he looked at the DVD, he made a fitness determination? I suppose one could presume that, yes. So he looked at the DVD, and this is a fact question, so he looks at the DVD and says, if I was a fact finder, I wouldn't find that the guy appeared to be incompetent to me. But I don't think he's looking at that DVD without the doctor's report. So he got the doctor's report. I mean, let's play this out. He got the doctor's report that says, I can't make some retroactive finding. But she did make findings about his demeanor at the time, and she had already evaluated him in 2001. This is nine years later, so she's got this history with this gentleman that she already knows. And she can determine how he appeared at that time from her own personal observations and interactions with him in her evaluations. So she has first-hand knowledge of this gentleman's demeanor, his psychiatric health and such. So she did it both at the time. There was, of course, a fitness hearing before trial. Then we also have this second evaluation later where she's trying to determine later, of course, the primary focus, unfortunately, with Counsel Lasker to do the Miranda warnings, which is an important factor. But what is important, as I've mentioned, is the alternate, so to speak, finding that she made regarding his demeanor, how he was responsive. How does the fact that he was on drugs at the time, the time to question, play into this? It can or it cannot. I mean, the case law goes different ways depending on the presentation of the defendant. Some case law, which we didn't cite in this particular case, does indicate that a person on psychotropic drugs is not necessarily incompetent or unable to waive rights or to confess. And there's other case law, depending on the facts of the situation, goes the opposite. It's just very fact-dependent. I guess that's the reason for my question. Pierce is pretty fact-dependent. Well, certainly, and I think... You've laid out all the facts, and so then who's supposed to make that decision? Well, I believe in this case, as I mentioned earlier, I believe the judge made that decision when he granted the motion to withdraw based on Counsel's statements in the... It's a fairly lengthy motion to withdraw, fairly comprehensive, I believe, in terms of his reasoning for why he chose to file that motion. I guess that may be sounding like a broken record. Going back to that, the answer for the judge is I didn't. And when she entered the order allowing him to withdraw, finding that there was no meritorious argument, how could she then allow Mr. Ritchie to proceed on his own? Well, in that case, we're just... He has under, I believe it's 122.5 or 4, where he's allowed Counsel where he's indigent. But Counsel can also be allowed to withdraw, and then certainly the defendant can either obtain new Counsel, hired Counsel, if he's able to do so. But if the thing isn't ethical, as she's saying is, you know, I'm allowing you to withdraw because she's saying as an ethical matter, there is nothing here of merit, and yet she grants it, but then she allows the defendant to continue to make the same argument. She did not deny the defendant an opportunity to correct her decision, so to speak, through further argument personally. You know, if the defendant had more to offer that the judge didn't consider through that motion to withdraw, then the defendant certainly could have presented it at the time, and the defendant could have said, if he was able, that I didn't do this voluntarily because I remember the interview, but the defendant could not remember the interview. So he couldn't present any evidence one way or the other to support any claim that Counsel should have done a motion to suppress, or there's no evidence whatsoever to be able to support that that would have been successful or that that wasn't a matter of trial strategy not to do the motion to suppress. Counsel had the original trial, guilty plea counsel had the DVD and he had all the information, and so that would have been a matter of strategy as to whether or not to file it, and everything we see here in this particular case doesn't go against that initial decision as far as I can determine. Mr. Russell, what is second stage for? Second stage is to review the petition in full with argument, have the state file a motion to dismiss or not as a case, maybe, but it's another preliminary determination. That first stage is the gist just to say, okay, you stated the gist of a constitutional claim, now let's not go to stage two, to the second stage. What we have is a finding by this court that defendants post-convention petition stated the gist, which we all say is a very, very low standard, stated the gist of a constitutional claim. At that point, Houser was appointed to put that claim in proper legal form so that you can then go into the second stage and people can start working on it on merits. But the only thing that counsel was called on to do at that point was to take defendant's claim that stated nothing more than the gist of a constitutional claim and put it in proper format for the court to consider. At that point, it's also in proper form for the state to come in and file a motion to dismiss on merit grounds and then the defendant has the position, defendant's counsel has the position to argue the merits pursuant to the motion to dismiss. It seems to me that your argument is conflating the first stage and the second stage and you're saying that because defense counsel could not substantiate to the standards of second stage that that relieved him of any obligation to put defendant's post-conviction petition with its first stage funding into proper form. I don't mean to be saying that if that's the impression I'm getting. That's definitely the impression you're giving me. Respectfully, that's not what I'm saying. The determination was made that there was a gist. We're in the second stage. That's all over. First stage is done because this court said there's a gist of an infection. So now we're in the second stage and as you say, counsel has the duty, the obligation to present the claims in a legal form. The claim that states the gist. Right, right. Now there are cases of course where if counsel reviews the petition and finds it's in good order as it is, counsel doesn't have to do anything. Counsel doesn't have to amend that petition. It just says good, here it is. So counsel was there just to review the claims and see if they're in the proper format. But then in this case, based on Greer of course, there's a different format where that was an automatic move to the second stage. We've got the Cunar then that addresses this situation where there is a judicial determination. And in both cases they allow motions to withdraw in the second stage. So I don't think there's any conflation of the duties. It's just a matter of once counsel gets there and he finds I've got nothing I can do for this petition. I have nothing that I can add to it. I have no legal claims that I can make based on, even though there was a judicial determination, based on the information that I have, which was new to him, the DVD that this court did not have, and the second evaluation that this court did not have. Those things spoke to this ability to address defendant's claims. And counsel believed that he could not bring those claims, even though there already had been a prior judicial determination. And again, I have to reiterate the Cunar courts stating that such a motion was a motion to reconsider. In Cunar, as I recall, there were two issues that were raised in the post-conviction petition that motion to withdraw in that case did not address at all. So they said it was an improper motion to withdraw and for that reason they reversed. We don't have that issue here because counsel addressed all the issues that were raised in defendant's petition, including, for instance, he said he wasn't allowed to be at certain hearings and counsel reviewed that and found that there were no hearings on those dates. Other things, the time, 120 days had passed. Well, he looked at the record and found that defendant had requested continuances, so that was on him. And so the time had not passed. Things like that. Those are independent evaluations. That's not necessarily taking his petition and putting it into legal form, but it's saying the record contradicts what defendant's claiming. And so that's a valid basis to withdraw from representation, in my opinion. Well, the background information about taking the drugs and the ability, what about that? About taking the drugs? We had no, as Dr. Zut said, she could find no records to substantiate what medications defendant had been on just prior to his interview. So she couldn't come up with any. So what's the evidence that we have that he was on drugs? Well, we had a prior history where he had been medicated on certain psychotropic drugs to control his mood disorders and his depression. So there's evidence in the record of taking drugs? Certainly. There was also evidence that he relapsed as far as his alcoholism on several occasions. And on occasion in particular, on the date that the murder occurred, he and one of his co-patients were out and both had been drinking at that time and apparently had gotten drunk at the time they committed this crime. But again, we're talking, as the doctor said, 14 and a half hours later after the incident where the defendant confessed. So she said that there would have been no effects of alcohol at that time. So we have evidence in the record of some of the claims the defendant raised? Only in the sense that he had mental health issues and he had at some time been medicated. You know, the remand said that Throckworth should appoint counsel to amend the petition. So there was a motion to withdraw and that was allowed. Has there ever been an appointed counsel to amend the petition? In this case, no. That would be correct. And the trial judge did, not dismissing the point that he had a public defender, but the trial judge just said, you can have counsel. And the defendant said, I don't want counsel. And then argued myself. I guess that brings back Justice O'Brien's issue or question. If the motion to withdraw is tantamount to a motion to reconsider and the trial court granted the motion to withdraw, then that's a finding that the petition was frivolous and lacking in merit. Is that correct? That would be the implication. Then why go forward? To give the defendant himself the opportunity to present evidence to prove that the judge's decision was either correct or incorrect. I think it's just being thorough to present his own claims. But she'd already found that the claim that he presented was frivolous. I'm not disputing that. But again, I believe that what we have here is the judge being thorough in offering the defendant the opportunity to present his claims without counsel at that point. Did you go to a third stage? It did not at this time. I mean, a third stage is an evidential stage. Certainly. What's the second stage? The second stage is on the pleadings. Yes. And so one of the pleadings, of course... So hypothetically gave the person a chance to amend the earlier petition that this court found stated the gist of the claim? I'm not sure I understand. When the judge allowed the attorney to withdraw based on the attorney's position that he didn't feel that anything would be successful, then allowed the case to still proceed, and then granted the state's motion to dismiss at the second stage. She was giving the defendant the opportunity to amend the petition? Well, I don't know that she allowed this to continue to be fair to the defendant. I can only suppose, Your Honor. I mean, this is a very unusual fact situation, of course. All I can say is that the judge granted that motion to withdraw based on counsel's assertions that he couldn't amend the petition. Now, perhaps that was not a determination that the petition was frivolous at that time. Perhaps I maybe misstated the implication of that. And that would be why, then, the judge would have allowed the defendant to continue to argue his petition. I mean, it seems to me in the motion to withdraw there are several different kinds of pleadings going on. In the pleading to withdraw, there are some statements that they can't there's no way to amend to support some of the positions, to put in the right form some of the positions the defendant took because those states don't exist, for example, right? Yes. Okay. And then there were some other things that, well, that's nowhere in the record, so I can't put that in the right format. Then there are other things that are sort of judgment calls, right? There are other things that are more like judgment calls, whether or not this would support this conclusion or this conclusion. But because of a judgment call on the part of the attorney who drew or found a motion to withdraw, it was in that attorney's judgment that ultimately they wouldn't be successful. I presume that would be correct. But there was a way to put it in the right format. There was a way to put something in that I'm taking drugs. But he couldn't substantiate that. Well, you had evidence of taking some drugs. But not at the time of the offense. That was in Dr. Zut's second evaluation. There were no medical records to support what he was on at the time of the offense, at the time of the confession. From the woman, from the one doctor? She did both evaluations. And so what was the first evaluation? It just dealt with the sanity, his ability to fitness to go to trial. That was the first evaluation. There was a time, back in 2001, she didn't get any of the records from the institution. She apparently had records. There were quite extensive notes, paragraphs on background and the history and such in that first evaluation also. And I think she had a list. I don't have it with me at my bench. I'm sorry. But there was a list in that evaluation of all the records that she reviewed. And also there was a list in the second evaluation of the materials that she reviewed. And of course, the narrative that she put into both evaluations of the history and the presentation and such. Anything else? Your Honor, if there are no other questions, I can ask that you affirm them. So the first thing to point out here is that there's no reason for this Court to vacate its 2009 decision. The State hasn't provided one and there's no basis in the law for it. The 2009 decision is what it is and it said that this petition was not frivolous and it was not patently without merit. So that's the starting point for our evaluation here. We've got a petition that's not frivolous and it's not patently without merit. What follows from that? And all three of your Honors have put your fingers on what I think the issue is in this case. And I think perhaps Justice Carter has stated it best and most succinctly, this Honorable Court found that this petition was not frivolous, it was not patently without merit, directed the trial court to appoint counsel to file an amended petition. At that point it became counsel's duty to file that amended petition unless there was some sort of ethical problem that would have prohibited it from doing so. There was no ethical problem that would have prohibited it from doing so. We have a determination by this Court that this is not a frivolous petition. We have a 2001 report that this myriad of psychological and psychiatric problems indicates that this guy is taking a number of different psychotropic medications at the time he confesses to the police. We have his own affidavit. And at that point it's counsel's duty to place that petition in its proper legal format, support it as best he can, and file it. I really don't have anything else to say on the matter, Your Honor. This is a fairly simple case. If counsel would have, in a hypothetical situation, in which whatever, whether it was a pastoral development or a change in the law or a witness changing what he or she might say, and counsel could not even file a petition at that point, that was not frivolous or badly without merit, then counsel has a duty to withdraw. Clearly, that's what Beer says, that's what Cooner says. But that simply isn't the case here. It simply isn't the case. There's nothing, Dr. Zook, determined in 2009. And I think Your Honor's point is a good one. What the state is trying to do is to conflate these two stages. Counsel is not supposed to try to determine at this stage of the proceedings whether or not he can substantiate these allegations. That's not counsel's duty. With counsel's duty, you've got a petition that's not frivolous, it's not badly without merit. It's very simple and it's very straightforward. File the petition. When the state files their motion to dismiss, if they file a motion to dismiss, you respond to it as best you can. If the state files an answer, then you go have an evidentiary hearing and you make the best argument that you can. But in this case, fairly simple. The court told the trial court to appoint counsel to file the amended petition. There's no ethical problem in filing the amended petition. File the petition. With all due respect, the post-conviction counsel, he dropped the ball on this one. He gave up too soon. He should have done what this court told him to. Is there any other questions, Your Honor? We simply ask that the court remand the speech for the second stage proceedings with new counsel. Thank you, Your Honor. Thank you both for your arguments in this case. The court will take this under advisement and make a decision in the future. And at this time, we'll take a short break for our panel discussion.